IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUSAN D. NORTH,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          Civil No.  13-1372-JAR
                                         )
CAROLYN W. COLVIN,                       )
ACTING COMMISSIONER OF                   )
SOCIAL SECURITY,                         )
                                         )
                    Defendant.           )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security denying Plaintiff Susan North's applications for a period of

disability and disability benefits under Title II of the Social Security Act,[1] and supplemental

security income benefits under Title XVI of the Social Security Act.[2]  Because the Court finds

that Defendant Commissioner's findings are not supported by substantial evidence, the Court

reverses and remands the decision of Defendant Commissioner.

## I.    Procedural History

On February 16, 2011, Plaintiff protectively applied for a period of disability and

disability insurance benefits and supplemental security income benefits.  Her applications

claimed an onset date of January 1, 1996; at the administrative hearing, Plaintiff orally amended

the onset date to February 16, 2010.[3]  Plaintiff was last insured for disability insurance benefits

on June 30, 2011.  Plaintiff's applications were denied initially and upon reconsideration.

---

[1]42 U.S.C. §§ 401–434.

[2]42 U.S.C. §§ 1381–1383f.

[3]Tr. 52.

Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Plaintiff then timely sought  judicial review before this Court.

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[4]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[6]

## III.     Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[7] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[4]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[5]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[6]*Id.*

[7]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

other kind of substantial gainful work which exists in the national economy."[8]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[9]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[10]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[11] since February 16, 2010,[12] the amended alleged onset date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: affective disorder and hypertension.  Nor does Plaintiff challenge the ALJ's determination at step three that she does not have an impairment or combination of impairments that meet or equal a listing.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity (RFC) at step four based on: her failure to consider Plaintiff's non-severe impairment of fibromyalgia and the disabling pain it caused; and her giving "limited weight" to the opinion of examining psychologist Dr. Laura DeGrandis but "great weight" to the opinions of Dr. Sallye Wilkinson and Dr. Carol Adams, the two state agency reviewing psychologists.

_____

[8]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[9]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[10]*Id.*

[11]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[12]The ALJ erroneously refers to the amended onset date as February 16, 2011.  The transcript of the administrative hearing evidences that Plaintiff orally amended to an onset date of February 16, 2010.

**IV.     Discussion**

    **A.     The ALJ's RFC Determination**

The ALJ determined that Plaintiff has the RFC to perform medium work except she can perform simple and intermediate tasks, and she should have only superficial contact with the general public.

    **B.     Fibromyalgia**

Plaintiff contends that the ALJ erred in failing to properly consider her non-severe impairment of fibromyalgia and the disabling pain and functional limitations it causes.  At step two, the ALJ found that Plaintiff's fibromyalgia was not severe, because although Plaintiff testified that she was diagnosed with fibromyalgia years ago, Plaintiff had never received medical treatment for fibromyalgia, medical records merely documented that Plaintiff had a self-reported history of fibromyalgia, and at a June 8, 2010 examination, Plaintiff reported no symptoms associated with fibromyalgia.   At step four, the ALJ further found that Plaintiff's allegations of disabling pain and functional limitations were not supported by objective, clinical medical evidence, including two consultative examinations on June 6, 2011 and October 6, 2011, which were "basically normal," nor supported by Plaintiff's daily activities, "which have generally been normal."  But the ALJ's fact findings are not supported by the evidence.

First, the ALJ erred in discrediting Plaintiff's allegation that she had been diagnosed with fibromyalgia.  The ALJ found that this was only supported by Plaintiff's own self-reported history of fibromyalgia.  But treatment providers repeatedly noted not only Plaintiff's history of fibromyalgia; they reported objective and subjective symptoms of fibromyalgia and disabling pain.  On June 8, 2010, Plaintiff presented with complaints of pain and asked for pain

medication.  The treatment provider noted an objective sign of pain, "(s)ome muscle spasm of the upper trapezius muscle and splenius captis area right greater than left."  The treatment provider prescribed hydrocodone.  The ALJ erroneously found that Plaintiff had not reported any symptoms associated with fibromyalgia on this date.  Then, on July 8, 2010, the treatment notes record that Plaintiff had been taking Percocet and Lortab for pain, and the treatment provider encouraged Plaintiff to not take these drugs to avoid becoming dependent on them.  The treatment provider assured Plaintiff that after some lab results, they might find a medication that helped her pain.  On August 13, 2010 and November 25, 2010, Plaintiff discussed her ongoing pain from fibromyalgia with Dr. Moore; and on November 5, 2010, Dr. Winger recorded Plaintiff's description of her pain "hurts allover. . . describing her muscles on neck back trunchal."

On June 10, 2011, Dr. Morrow examined Plaintiff and noted an objective finding associated with pain and fibromyalgia, "(t)ender points appreciated at pectoralis muscle just lateral to the second costochondral junction, 2 cm below the lateral epicondyles, the medial knees in the are of the anserine bursa, and the garstrocnemius-Achilles tendon junction."  Four months later, on October 6, 2011, Dr. Henderson noted the identical finding in his examination of Plaintiff.

Furthermore, treatment notes repeatedly referenced Plaintiff's pain, as well as prescribed medications for pain and other treatments considered.  In October 2011, Dr. Winger prescribed Fluoxetine and started a taper intake schedule of Savella to treat her depression and help with her pain.  In April 2012, Plaintiff was prescribed Tramadol and Meloxa for pain, and the doctor noted "fibro pts + 11/18.  And in November 8, 2012, Plaintiff received a shoulder injection to

address the pain.

Nonetheless, in discrediting Plaintiff's allegations of disabling pain, the ALJ heavily relied upon other notations made by Dr. Henderson, that Plaintiff had no difficulties with orthopedic procedures during his examination, and that in Dr. Henderson's view, Plaintiff's complaints of discomfort were not supported by objective findings.

But the ALJ's assessment was selective; the ALJ apparently found little significance in Dr. Henderson's note that Plaintiff grimaced with pain.  Further, the ALJ chose to ignore the notes of Dr. Morrow, who examined Plaintiff on June 10, 2011, and noted that Plaintiff had mild difficulty getting on and off the examination table and with heel and toe walking, moderate difficulty squatting and arising from a sitting position, and severe difficulty hopping.  The ALJ is not to engage in selective reliance upon the medical evidence, but must consider all of the medical evidence in an objective way.[13]  The ALJ thus improperly evaluated the evidence and erroneously found that there was no medical evidence that Plaintiff had been diagnosed with fibromyalgia.

The ALJ also selectively relied upon Plaintiff's activities of daily living to find that there was not substantial evidence to support Plaintiff's allegations of disabling pain and functional limitations.  The ALJ found that Plaintiff's daily activities, as they related to physical limitations, "have generally been normal."  The ALJ described that Plaintiff could take care of personal needs, prepare simple meals, and perform household chores including cleaning and shopping for groceries.  Yet Plaintiff stated or testified that dishwashing and vacuuming were too painful, that she is often unable to finish household chores and that because she could not walk stairs and

---

[13]*See Sitsler v. Astrue*, 410 F. App'x 112, 117–18 (10th Cir.2011)("We have criticized this form of selective and misleading evidentiary review. . .").

6

walk to the apartment complex's laundry room, she had to do her laundry in her kitchen sink. With respect to personal care, Plaintiff stated or testified that she is only able to dress herself slowly, has difficulty getting up and down from the toilet, and only takes a shower every three to four days, as little as possible because of the pain.

The ALJ also noted that Plaintiff could drive, including driving for her job as a courier after the onset date, but now used public transportation, which "indicates a fairly good ability to sit for prolonged periods, concentrate and focus, and walk distances." Yet, Plaintiff stated or testified that she took public transportation if a friend could not drive her, and that she could not walk more than a half block without resting for ten to fifteen minutes. The ALJ did not ask Plaintiff how far she had to walk to take public transportation.

Moreover, the ALJ improperly discredited Plaintiff's complaints of pain and the degree of functional limitations from fibromyalgia on the basis of the lack of objective, clinical evidence of fibromyalgia. The ALJ noted that Dr. Henderson's examination on October 6, 2011 revealed normal range of motion of back and hips and stable gait and station. The ALJ also noted that there was no objective medical evidence such as x-rays to support Plaintiff's allegations of pain and functional limitations. But, as the Tenth Circuit noted in *Moore v. Barnhart*,[14] this type of discrediting of a Plaintiff's complaints of pain, symptoms, and limitations from fibromyalgia because of the lack of clinical evidence, indicates a fundamental misunderstanding of fibromyalgia.[15] As the Tenth Circuit explained, fibromyalgia is a disease that is "poorly-misunderstood within much of the medical community [and]. . . .is diagnosed entirely on the

---

[14] 144 F. App'x 983 (10th Cir. 2004).

[15] *Id.* at 990–91.

basis of patients' reports and other symptoms."[16]  There are no laboratory tests for the presence

or severity of fibromyalgia, which can be disabling; the primary symptoms are pain all over the

body, fatigue, disturbed sleep, and multiple tender points, while muscle strength, sensory

functions and reflexes are normal despite the patient's complaints of numbness.[17]  Notably,

Plaintiff in this case testified, and the medical evidence repeatedly documents, that she

experiences pain in various parts of her body, back, shoulders, arms and legs, as well as

migraines, and has disturbed sleep, fatigue and multiple tender points.  Both Drs. Morrow and

Henderson found consistent trigger-point findings.  And on April 27, 2012, the treatment note

records fibromyalgia trigger points "+11/18," signifying that Plaintiff had eleven or more out of

eighteen trigger points.  This is significant because clinical signs and symptoms supporting a

diagnosis of fibromyalgia include "primarily pain in all four quadrants of the body and at least

eleven of the eighteen specified tender points on the body."[18]

 The ALJ also erroneously found that no one had diagnosed fibromyalgia, and erroneously

found no significance in Plaintiff's statement that Dr. Tran had diagnosed fibromyalgia years

ago, after ruling out lupus.  The ALJ should have expanded the record to obtain records from Dr.

Tran and any other treatment providers who diagnosed or treated Plaintiff for fibromyalgia.  On

remand, the ALJ must follow the proper legal standards in evaluating Plaintiff's pain testimony,

including SSR 96-7p[19] and the factors for evaluation of pain testimony, as required by the Tenth

---

[16]*Id.* at 991 (citations omitted).

[17]*Id.*

[18]*Id.* (quoting from the American College of Rheumatology Guidelines).

[19]SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Circuit in *Luna v. Bowen.*[20]

    **C.**    **Weight accorded examining psychologist Dr. Laura DeGrandis, versus weight accorded state agency psychologists Drs. Sallye Wilkerson and Carol Adams**

Plaintiff contends the ALJ erred in giving "limited weight" to the opinion of examining psychologist Dr. Laura DeGrandis, but "great weight" to the opinions of Dr. Sallye Wilkinson and Dr. Carol Adams, the two state agency reviewing psychologists.

Dr. DeGrandis opined that Plaintiff would likely be capable of understanding and following simple instructions. The ALJ's RFC was not as limiting; the ALJ found that Plaintiff could perform simple and intermediate tasks. Dr. DeGrandis further opined that Plaintiff would be capable of "working well alongside others in a supportive environment." The ALJ's RFC was not as limiting; the ALJ found that Plaintiff could have superficial contact with the general public. Other limitations included in Dr. DeGrandis's opinion were not adopted by the ALJ in the RFC: that Plaintiff would likely not be capable of keeping adequate pace or regular attendance in a full time work environment.

The ALJ gave "limited weight" to Dr. DeGrandis's opinion because: (1) Plaintiff had not had mental health treatment before this evaluation and her depression was controlled with prescribed medication; (2) Dr. DeGrandis's observations about Plaintiff's extreme emotional distress was situational, as Plaintiff's husband had recently died; (3) Plaintiff scored twenty-eight out of thirty of the Mini Mental Status exam administered by Dr. DeGrandis; and (4) Dr. DeGrandis heavily relied on Plaintiff's subjective complaints and not her treatment history.

In contrast, the ALJ gave "great weight" to the opinions of state agency psychologists

---

[20]834 F.2d 161, 164–66 (10th Cir.1987).

Drs. Sallye Wilkinson and Carol Adams, who did not examine Plaintiff but reviewed the records. The ALJ explained that she gave their opinions great weight because: (1) they noted that Plaintiff had received a score of twenty-eight out of thirty on the Mini Mental Status Examination; (2) their opinions are generally consistent with the evidence as a whole; and (3) the doctors "are well acquainted with the agency's rules governing the criteria for disability and the decision-making process."

Of course, irrespective of a medical source's knowledge of the agency's rules and criteria,
a medical source's opinion of disability or employability is not dispositive.[21]  Final responsibility for determining ultimate issues, such as a claimant's RFC and whether a claimant is disabled, is reserved to the Commissioner.[22]  Other than referencing Plaintiff's score on the Mini Mental Status Examination, the ALJ does not specify how the opinions of the state agency psychologists are consistent with the evidence as a whole.  For the evidence is sparse; Plaintiff had not been treated for mental illness other than receiving prescribed medication from Dr. Winger in 2010, for depression.  Thus, it is unclear with what evidence these doctors' opinions were consistent.

The state agency psychologists relied upon their review of records, including the evaluation of Dr. DeGrandis.  Given the paucity of evidence, other than Dr. DeGrandis's evaluation, the ALJ was improperly dismissive of Dr. DeGrandis's evaluation, which Defendant commissioned for the very purpose of obtaining an independent psychological evaluation of Plaintiff.   In evaluating the opinions of medical sources, the ALJ is to use the so-called

---

[21]*Castellano v. Sec. of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

[22]SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

*Goatcher* factors.[23]  Here, the ALJ did not have a treating source's opinion, but the opinions of Dr. DeGrandis, who evaluated Plaintiff and the opinions of Drs. Wilkinson and Adams, who reviewed Dr. DeGrandis's evaluation and the other sparse medical evidence concerning Plaintiff's mental health.  This situation illustrates the significance of considering the treatment (or in this case evaluation) relationship between the doctor and patient, and why there is a presumption that an examining medical source's opinion is entitled to more weight than the opinion of a medical source who merely reviewed the record.[24]

Moreover, while the fact that Plaintiff had not sought or received treatment for mental illness is certainly a factor, it should not be the dispositive factor.  As this court noted in *Ott v. Chater*,[25] "[i]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[26]  Based on her independent evaluation of Plaintiff, among Dr. DeGrandis's findings were that Plaintiff's "reasoning ability and judgment were fair and her insight was limited."

Furthermore, the ALJ discredited Dr. DeGrandis's opinions as too heavily reliant on Plaintiff's subjective complaints, yet the ALJ failed to mention a number of Dr. DeGrandis's findings that were based on her observations and evaluation and not on Plaintiff's subjective

---

[23]*Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6))(factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion).

[24]*Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir.2012)(citing C.F.R. §§404.1527(d)(1), 416.926(d)(1), which are now found, with substantially the same language, at 20 C.F.R. §§ 404.1527(c)(1) and 416.927(c)(1)).

[25]899 F. Supp. 550, 553 (D.Kan.1995).

[26]Id. (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

complaints.  Although Plaintiff scored well on the Mini Mental Status Examination, the ALJ did not mention Dr. DeGrandis's findings that Plaintiff "was unable to do Serial 7 Subtractions but was able to spell the word WORLD backward correctly."  Nor did the ALJ mention Dr. DeGrandis's finding, based on her testing and evaluation, that Plaintiff "was able to recall the names of three objects correctly immediately, but recalled only one of the three objects after a five minute delay."  This was of course supportive of Dr. DeGrandis's opinion that Plaintiff was limited to simple instructions, needed a supportive work environment, and would not be capable of keeping adequate pace in the workplace.  The ALJ's selective assessment of Dr. DeGrandis's opinion was improper and particularly problematic given the paucity of other evidence relevant to Plaintiff's mental limitations.

Furthermore, as Plaintiff posits, there is an unexplained difference between the opinions of Drs. Wilkinson and Adams that Plaintiff can do intermediate *tasks*, and the ALJ's RFC that Plaintiff can do intermediate *work*.   For these reasons, on remand, the ALJ must apply the correct legal standards, and properly weigh the opinions of medical sources, and if necessary, develop the record on Plaintiff's affective disorder and the functional limitations from that severe impairment, including developing the record to obtain records from Dr. Tran, who reportedly first diagnosed Plaintiff's fibromyalgia.

## V.    Conclusion

For these reasons, the Court concludes that the ALJ erred in evaluating Plaintiff's pain and functional limitations from fibromyalgia and thereby erred in assessing Plaintiff's RFC at step four.  The ALJ further erred in not properly assessing and weighing the opinions of medical sources.  Accordingly, the decision of the Commissioner will be reversed and remanded.

Upon remand, the Commissioner must follow the proper legal standards for evaluating Plaintiff's testimony about her pain and functional limitations from fibromyalgia and must closely and affirmatively link the findings to substantial evidence.  The ALJ should further evaluate the evidence of Plaintiff's repeated attempts to seek medical relief for her pain, the medications she has taken, the measures taken by treating physicians, and Plaintiff's various other attempts to alleviate the pain.  The ALJ should, if possible, develop the record by obtaining records from Dr. Tran and any other treating providers.  The ALJ must then evaluate Plaintiff's RFC in accordance with these determinations.

Further, upon remand, the ALJ must properly weigh the opinions of the medical sources and if necessary, develop the record with a further updated evaluation of Plaintiff's mental health and limitations.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: January 14, 2015

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE